LEON AVERETT AND PERCY DONALD LIVINGSTON *v.* STATE

No. 42498        January 28, 1963        149 So. 2d 320

*Bidwell Adam*, Gulfport; *Forrest B. Jackson*, Jackson, for appellants.

Rodgers, J.

Appellants were convicted of the crime of grand larceny in the Circuit Court of Harrison County, Mississippi, and sentenced to serve a term of five years in the State Penitentiary. From this conviction and sentence, they have appealed to this Court.

The trial and conviction of appellants arose under the following facts and circumstances: Jasper Lanier Meeks advised a Special Agent for the Southern Bell Telephone Company in Florida, that he, in company with appellants, Leon Averitt and Percy Donald Livingston, was about to make a tour through the Southern part of the United States, into Texas, and finally into Colorado. The Special Agent knew the purpose of this trip. He had talked to Meeks on numerous occasions. He said

in answer to the question "You knew they were coming for that purpose didn't you? A. When this group gets together that's the only thing they travel for." On the 19th day of January 1962, the day before the alleged larceny is said to have occurred, an agent of the Southern Bell Telephone Company was notified by a state officer who had been previously stationed at the Pascagoula toll gate bridge that the three men had crossed the bridge and were then in Biloxi. Agents of the Telephone Company, officers from the local police department and sheriff's office were promptly alerted to the fact that appellants were in the area. Prior to the arrival of appellants, Agents for the Telephone Company had installed switches in several of the pay telephones located along Highway 90. These switches were arranged so that the removal of the cash box from a telephone turned on a light located on a light pole nearby. Marked coins were also placed in the cash boxes. Early in the morning of the 20th of January, agents and officers observed appellants as they entered two telephone booths at Billups Service Station on Highway 90. They also observed a third man going into one of the booths with one of the appellants, and immediately thereafter the signal light came on, signifying that the cash box in the booths had been removed. When appellants and Jasper Lanier Meeks left the booths and proceeded toward their automobile, they were arrested by a Deputy Sheriff of Harrison County. Jasper Lanier Meeks, sometimes called "Jack" Meeks, made his escape by running away. Appellants were promptly searched, and it was discovered that each had a large pocket sewn in his coat. The marked coins were discovered in their pockets. One of the prisoners, Percy Livingston, had twenty-five dollars and twenty-five cents in coins in the pocket of his coat. The sum of twenty-eight dollars and seventy-five cents in coins was taken from the person of Leon Averitt. Marked coins were also found on his person.

The seals taken from the cash boxes were also found on the persons of the prisoners, and they had what is described as "* * * an expert lock-picker's pick", a "hand chuck and a steel bit. This is to be used to open other types of receptacles." The officers searched appellants' automobile and found three canvas money bags, coin wrappers, a pair of cutting pliers, a box-end wrench, long instruments used as lock-picks, and fifty-five dollars in coins.

The morning after appellants were apprehended, H. C. Stubbs, Larry A. Taylor and T. C. Josey, Agents of the Southern Bell Telephone Company, had breakfast with "Jack" Meeks at the Broadwater Beach Motel Restaurant. The evidence reveals that the above-named agents knew that Jack Meeks was expected to be with the persons apprehended, and that Mr. Josey believed that Meeks was the third man engaged in the larceny the night before at the time he had breakfast with him.

When the indictment was returned charging appellants with grand larceny, they entered their individual pleas of "not guilty", and filed a petition asking the trial judge to summon and transport a witness, Jasper Lanier Meeks, from Allegheny County Jail at Pittsburgh, Pennsylvania, to the Harrison County Courthouse, to act as a material witness in their behalf. The petition was filed under the procedure set out in Sec. 1892, Miss. Code 1942, Rec., known as the "Uniform Witness Attendance Act." Thereafter, the trial judge signed a certificate, certifying that Meeks was "very necessary" as a "material witness" and "defendants have alleged that it was not possible for" them "to proceed to trial without the presence of the said witness * * * in said criminal prosecution." On the day the case was set for trial, defendants made a motion for a continuance on the ground that it was necessary to obtain the testimony of the absent witness; that the application presented to a trial judge in the State of Pennsylvania was denied,

and that petitioners had tendered the necessary travel expense to bring the witness to Mississippi and return him to Pennsylvania. The motion for continuance sought time in which to employ an attorney in the State of Pennsylvania to appeal the order of the trial judge to an appellate court, in an effort to obtain the presence of the witness at their trial.

The motion for continuance alleged that the defense to be offered by defendants was entrapment. That is to say, appellants were inveigled into taking the property of the Telephone Company, for which they were arrested. Considerable evidence was taken upon this motion and finally overruled by the trial court. Appellants complain that this was error.

(Hn 1-4) We are of the opinion that the trial court cannot be put in error for overruling the motion for a continuance in this case for the reasons hereinafter set out.

Defendants offered evidence in an attempt to show that they were inveigled into taking money belonging to the Southern Bell Telephone Company by authorized agents of the Company, and assert that the Company thereby consented to the appropriation of the money by them. It is argued, in effect, that since the money was taken with the consent of the owner, it did not constitute grand larceny. The evidence introduced by defendants on the motion for continuance consisted of testimony given by Agents of the Southern Bell Telephone Company, in answer to questions propounded by the attorney for defendants. Evidence offered on the motion for continuance, at best, raised only an inference that the Southern Bell Telephone Company aided Meeks in obtaining a commuted sentence in Florida, and that he was their informant. The evidence, on the other hand, shows that the Southern Bell Telephone Company did not enter into an agreement with Meeks to inveigle appellants into taking money from their telephone cash

boxes. Evidence adduced shows that Meeks called the Special Agent for the Southern Bell Telephone Company and informed him that they were about to make a trip across the Southern part of the United States on Highway 90, through Florida, Alabama, Mississippi, Louisiana, and into Texas and Colorado, to rob pay stations across the country. Testimony of John D. Montgomery, witness for defendants, shows: "Now, then, I want to ask you whether or not at any time there was ever any plan that Meeks was to take them to a particular telephone and induce them to break into a telephone, was there any such plan or arrangement?" A. "No, sir." From this testimony, the trial judge could reasonably infer and find that there was no agreement to inveigle defendants into taking the money of the Southern Bell Telephone Company.

In order to obtain a continuance on the grounds that defendant is deprived of a material witness, it is necessary for the applicant to show that he has a reasonable expectation of procuring the attendance of the absent witness at a subsequent term of the court. There was no effort made to show, with any degree of certainty, that attendance of the witness in this case could be obtained at any future date. Samuels v. State, 153 Miss. 381, 120 So. 920; Woodruff v. State, 220 Miss. 24, 70 So. 2d 58; Hodgkin v. State, 172 Miss. 297, 160 So. 562; Newbill v. State, 220 Miss. 382, 70 So. 2d 924.

There was no showing that the witness would testify, or as to what he would testify, if he were present; and since the witness was clearly involved in the grand larceny, he could not have been required to give evidence that would tend to incriminate him, without his consent or against his will. Art. 3, Sec. 26, Miss. Constitution 1890; Wheat v. State, 201 Miss. 890, 30 So. 2d 84.

The matter of granting or refusing a continuance rests in the broad discretion of the trial judge, and

unless there is abuse of judicial discretion, the case will not be reversed for failure to grant it, unless it is shown that injustice will result therefrom. Sorber v. State, 225 Miss. 436, 76 So. 2d 234; Lee v. State, 220 Miss. 298, 70 So. 2d 609; Smith v. State, 219 Miss. 741, 69 So. 2d 837.

When the State and defense had closed their testimony, defendants made a motion for a directed verdict upon the ground that they were not guilty of the crime for which they were being charged because they were entrapped or inveigled into taking the property of Southern Bell Telephone Company. This Court gave one instruction on the defense of entrapment:

"The Court instructs the jury for the Defendants that entrapment as a defense means the act of inducing or leading a person to commit a crime not originally contemplated by him for the purpose of trapping him in its commission and prosecuting him for the offense, but the Defendants cannot rely on the fact that an opportunity was intentionally given them to commit the crime which originated in the mind of the accused; and the fact that an opportunity is furnished constitutes no defense."

The defense here invoked is entrapment. What is meant by the defense of entrapment? It is said. by Mr. Burdick in his work on The Law of Crime, Sec. 195, p. 252, that " 'Entrap' means, literally, to ensnare, to catch in a trap, but 'entrapment', as the term is now usually employed in the law of crime, means inciting, inducing, or instigating one to commit a crime not originally contemplated by him, for the purpose of entrapping him in its commission and instituting criminal prosecution against him. The mere furnishing of opportunity to another who is ready and willing to commit the offense is not such entrapment, but where the owner of property, either by his own or his agent's act, promotes and instigates its theft, for the purpose of entrapping the thief, and does so, the accused may defend on the ground that

the instigation on the owner's part amounted to his consent that the property should be taken, and, therefore, prevented the accused's act from being larceny.'' See 22 C. J. S., Criminal Law, Sec. 45 (e), p. 138; 15 Am. Jur., Criminal Law, Sec. 335, p. 24; Sec. 334, p. 23; Sec. 336, p. 25.

The reason for the foregoing rule of entrapment becomes apparent when it develops from the facts that the prosecutor, in setting his trap, waives his legal rights — as when he consents to the act and the offense requires want of consent on his part — there is no crime and the prosecution will fail. Lowe v. State, 32 So. 956 (Fla. 1902).

(Hn 5) One of the elements in the crime of larceny is trespass, that is, taking without the consent of the owner, or domino invito. Burdick's, The Law of Crime, Sec. 530, p. 293. The rule is stated in 32 Am. Jur., Larceny, Sec. 23, p. 908, as follows: ''The felonious or fraudulent taking of personal property from the possession of another against his will or without his consent is essential to larceny, for a trespass upon his right to possession is a characteristic of a larcenous taking, and the crime is not ordinarily committed where the property is taken with the full knowledge and consent of the owner or his authorized servant or agent, however guilty may be the taker's intent.'' The same textwriter, in Sec. 27, p. 913, uses the following language: ''One who seeks to entrap another in the commission of larceny must take care that in his efforts he does not overreach himself and consent to the taking of his property. Therefore, the setting of such trap must not go further than to afford the would-be thief the amplest opportunity to carry out his purpose, formed without such inducement on the part of the owner of the property as to put him in the position of having consented to the taking. * * * If the criminal design originates with the accused, and the owner or his agent or servant does not suggest the

design or actively urge the commission of the crime, the mere fact that the owner, suspecting the accused, in person or through his servant or agent exposes the property, neglects to protect it, or furnishes facilities for the execution of the criminal design, under the expectation that the accused will take the property or avail himself of the facilities furnished, will not amount in law to a consent, although the agent or servant, by the instructions of the owner, appears to co-operate in the execution of the crime.'' See also 52 C. J. S., Larceny, Sec. 24, p. 816; 15 Am. Jur., Criminal Law, Sec. 336, p. 25.

There are five cases on the subject of entrapment reported in our jurisdiction. In the case of Strait v. State, 77 Miss. 693, 27 So. 617 (1900), the prosecutors had reason to believe their office had been entered by defendant, and hired a detective to investigate the matter. The detective borrowed defendant's key and entered the office, accompanied by defendant, under the pretense of getting a bundle he had left. They were then arrested on the charge of burglary. The Court said ''It is plain that Morton, (the detective), is not guilty of burglary, because he was acting at the instance of the prosecutors, and he was expected by the prosecutors to use his own judgment in luring the defendant into a trap to be set for him. * * * The defendant was lead into the office of the owners by a decoy operating at their instance, and however reprehensible the act be morally, he is not guilty of burglary. * * *''

In the case of Brantley v. State, 107 Miss. 466, 65 So. 512, the evidence of defendant was to the effect that a deputy sheriff persuaded him to purchase some whiskey from Mrs. Smith, and the deputy sheriff promised that he would see that no harm resulted to him by reason of aiding him in ferreting out ''blind tigers.'' This evidence was excluded by the trial court, and on appeal, this Court said ''* * * what he did amounts simply to this: That, in order to provide Mrs. Smith

with an opportunity of violating the law, he himself committed a crime distinct from, and not included in, the one she was thereby induced to commit.'' The case was then affirmed.

In the case of French v. State, 149 Miss. 684, 115 So. 705 (1928), defendant was charged with the sale of intoxicating liquor, and he asserted that he was induced to sell the whiskey by an offiser of the law and was thus entrapped into committing a crime. Instructions were refused by the trial judge on the question of entrapment. This Court pointed out on appeal that ''* * * Appellant is not charged with a crime involving the personal or property rights of individuals, such as theft, burglary, trespass, rape, and kindred offenses, where the consent of the person or owner might be an element of the offense. * * * Schneider (deputy sheriff) had no more right than did any other individual to consent to the violation of our state prohibition law, or to grant appellant immunity from prosecution for its violation. * * * There are authorities to the contrary, but we deem it safer to align ourselves with what seems to be the great weight of authority.'' The conviction was affirmed.

In the case of Forbert v. State, 179 Miss. 66, 174 So. 248 (1937), the circuit judge directed a deputy sheriff to go out and get a couple of bottles of wine. The deputy sent to appellant's place of business and informed him that he desired to purchase a bottle of wine for the judge. Appellant told him to take the wine without paying for it and the deputy carried it to the judge. Defendant was indicted for the unlawful possession of wine, and upon the trial he made a motion to exclude the testimony of the two deputy sheriffs because of the manner in which the evidence was secured. The motion was overruled by the trial court; and, on appeal, the case was affirmed. However, in that case,

entrapment was not clearly brought out as a defense, as is shown by the opinion of this Court.

In the case of McLemore v. State, 241 Miss. 664, 125 So. 2d 86, (Suggestion of Error, 126 So. 2d 236), defendant was convicted of offering a bribe to the district attorney. Defendant made a motion for a directed verdict based upon the defense of entrapment. The trial court overruled the motion; and this Court used the following language in affirming the conviction of defendant: "* * * defendant cannot rely on the fact that an opportunity was intentionally given him to commit the crime which originated in the mind of the accused. The fact that an opportunity is furnished constitutes no defense. 1 Anderson's Wharton's Criminal Law and Procedure (1957), Sec. 132. There is a very clear distinction between inducing a person to do an unlawful act, and setting a trap to catch him in the execution of criminal designs of his own conception. The State's evidence amply supports the conclusion that the criminal intent to make the offer to bribe originated in the mind of defendant, and Strickland simply furnished the opportunity and the means for McLemore to consummate that purpose."

(Hn 6) In the instant case, agents and servants of the Telephone Company were introduced by defendants in an effort to prove that they were induced, inveigled or incited into taking personal property of the Southern Bell Telephone Company and were thereby entrapped. We are of the opinion, however, that this testimony is not sufficient to establish that they were induced by an agent of the Telephone Company to take its property, so as to establish consent in the taking of its property. At best, the testimony of the Special Agents show that "Jack" Meeks called Mr. Montgomery and advised him that defendants were about to make a trip, which he knew was for the purpose of taking money from telephone cash boxes, and they had breakfast with "Jack"

Meeks the morning after the arrest of defendants. This would raise an inference that "Jack" Meeks was an agent of the Telephone Company, but it did not establish as a fact that he induced defendants to commit the crime of larceny.

(Hn 7) Defendants did not testify on the motion for continuance, or upon the trial of the issue presented by the indictment. Entrapment is an affirmative defense, and when the prosecution has made out a prima facie case showing the commission of a crime, it then devolves upon defendant to offer an explanation so as to raise a reasonable doubt of guilt by showing that he was entrapped, or induced, to do the act complained of, and that by the entrapment the prosecutor consented thereto. This rule is expressed in 22 A, C. J. S., Criminal Law, Sec. 573, pp. 318-19, as follows: "In accordance with the general rules * * * the prosecution always has the burden of proving the guilt of accused beyond a reasonable doubt, accused never has the burden of satisfying the jury of his innocence, or to disprove facts necessary to establish the offense charged; but he has only the burden of raising a reasonable doubt of his guilt, and it has even been held that he does not have that burden.

"There is a manifest distinction, however between the burden of proof and the burden of adducing evidence, also known as the burden of explanation, and, while the burden of proof never shifts, the burden of adducing evidence may shift from side to side according to the testimony, and it may require accused to produce testimony for himself or suffer an inference of guilt from the facts already proved to be drawn against him by the jury. * * *" Dobbs. v. State, 200 Miss. 595, 29 So. 2d 84; White v. City of Philadelphia, 197 Miss. 166, 19 So. 2d 493, Suggestion of Error Overruled, 19 So. 2d 744; Page v. State, 160 Miss. 300, 133 So. 216;

State v. Marquardt, 139 Conn. 1, 81 A. 2d 219, 31 A. L. R. 2d 1206. Cf. Forbert v. State, supra.

(Hn 8) In any case, the defense of entrapment, like any other affirmative defense is a question of fact to be submitted to the jury, along with evidence in chief, as an issue to be determined by the jury. People v. Rodriguez, 214 P. 452 (Cal. 1923). See also Note 55, 22A C. J. S., Criminal Law, p. 319.

In the instant case, the court's instruction on the question of entrapment submitted the evidence adduced to the jury and the jury did not accept appellants' theory but found them guilty. We find no error in the record in this case, and for that reason we are of the opinion that the judgment of the trial court should be affirmed.

Affirmed.

*McGehee, C. J., and Kyle, Ethridge and Jones, JJ., concur.*